NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JIMMY VELEZ,                                    )
                                               )
          Appellant,                           )
                                               )
v.                                             )          Case No. 2D16-4794
                                               )
ELIZABETH MONTALVO-VELEZ,                      )
                                               )
          Appellee.                            )
_____)

Opinion filed August 10, 2018.

Appeal from the Circuit Court for Lee
County; John S. Carlin, Judge.

Brian J. Kruger and Luis E. Insignares of
Luis E. Insignares, P.A., Fort Myers, for
Appellant.

No appearance for Appellee.


BLACK, Judge.

         Jimmy Velez (the former husband) challenges the final judgment of

dissolution of marriage, arguing that the award of permanent alimony to Elizabeth

Montalvo-Velez (the former wife) is not supported by sufficient findings or evidence.[1]

_____

       [1]The former wife did not participate in this appeal.

Because the trial court failed to make sufficient factual findings to allow for meaningful review and otherwise failed to make the express finding mandated by section 61.08(8), Florida Statutes (2014), we reverse the portion of the final judgment related to alimony.

The trial was held on August 18, 2016. The former husband testified that he earns, on average, $1300 per month. This is supported by his amended financial affidavit, which indicates that the former husband's gross income is $1300 per month and that his net income is $1255 per month. Yet the former husband also testified that he has been paid exclusively in cash since May 2015, one month before the former wife filed for divorce, and that he has no idea how much he has earned since then. The former husband does not have a bank account, and he does not report his income to the Internal Revenue Service. According to his amended financial affidavit, the former husband's monthly expenses exceed his monthly net income by almost $500. The former husband was incarcerated in February 2016 for failing to pay court-ordered temporary alimony to the former wife but has been making the payments since then. The former husband was questioned about where the "extra money" was coming from since he has been paying both temporary alimony to the former wife and his expenses. He responded as follows: "I have to work and do additional property inspections to make up the difference or get—be delayed on my bills. Like now, my car payment is delayed, my rent hasn't been paid, my [car] insurance is due, hasn't been paid either." The former husband later admitted that he was not behind on rent and was only one month behind on his car payment. The document he presented to the court in support of his assertion that he was one month behind on his car payment did not indicate how much was owed or how far behind he was. Moreover, the car insurance statement

presented to the court demonstrated only that a payment was due on August 6, 2016. The former wife's counsel argued in closing that the former husband's income is more than the former husband claims it to be and that he has "tried to find it by numerous ways, and he's done a good job of covering up, good job of hiding it through his girlfriend." The court made the following findings in the final judgment regarding the former husband's income and ability to pay alimony:

> The [former] [w]ife proved she had a need for alimony, and the [former] [h]usband showed that he had the ability to pay alimony. The [former] husband testified that he solely supported the [former] wife and the minor children during the marriage. He further testified that he wanted the [former] wife at home to take care of the children. The [former] husband was less than truthful when it came to his income. . . . On December 14th, 2015 the court imputed income to the [former] husband [in the amount] of $900.00 a week based on his testimony, evidence presented. For a period of time the [former] husband wrote checks from his company to his adult children. He then had the adult children cash the checks and return the cash to him. By his own admission he did this to avoid child support payment[s] in the State of New York. The [former] husband's testimony waivered [sic] as to his income. He stated he may make $3,000 a month even though prior tax returns showed him making in excess of $50,000.00 annually. . . . To obtain the standard of living that the [former] [w]ife maintained during the marriage she would need $370.00 per week [in] alimony. This is the previous amount this court ordered the [former] husband to pay. The [former] husband was once incarcerated for non-payment on February 17, 2016. His purge amount was $1460, cash. He was able to obtain the cash bond within 24 hours and posted on February 18, 2016. Since that date, the [former] husband has faithfully paid the $370.00 weekly with no issues. The court grants the [former] wife alimony in the amount of $370.00 per week.

In order to impute income to an unemployed or underemployed spouse, the court must determine based on competent substantial evidence whether that spouse came to be in such a state voluntarily and whether he or she has been diligent

- 3 -

in finding replacement income. See Lafferty v. Lafferty, 134 So. 3d 1142, 1144 (Fla. 2d DCA 2014) (first citing Valentine v. Van Sickle, 42 So. 3d 267, 274 (Fla. 2d DCA 2010); and then citing Schlagel v. Schlagel, 973 So. 2d 672, 675 (Fla. 2d DCA 2008)); see also Soria v. Soria, 237 So. 3d 454, 461 (Fla. 2d DCA 2018) ("A court may impute income if a party is earning less than he could, based on a showing that he has the capability of earning more by the use of his best efforts." (quoting Alpert v. Alpert, 886 So. 2d 999, 1001 (Fla. 2d DCA 2004))). In addition to finding a basis for imputation of income, the court must also indicate the amount imputed. See Nieboer v. Nieboer, 816 So. 2d 1259, 1260-61 (Fla. 2d DCA 2002). However, "[w]here there is insufficient evidence to determine the amount to impute, there is a presumption based on the spouse's historical earnings that arises, though it can be rebutted by the spouse to whom income is imputed." Lafferty, 134 So. 3d at 1145.

Prior to May 2015, the former husband had a documented work history including pay stubs and tax records and consistently made about $50,000 per year. Given the court's findings that the former husband wavered and was "less than truthful" about his income and the fact that his work history is no longer documented, imputing income based on his historic income may be appropriate. Cf. Ghay v. Ghay, 954 So. 2d 1186, 1190 (Fla. 2d DCA 2007) (stating that it may be appropriate for the trial court on remand to impute income to the husband in calculating the temporary support award since he "attempted to divest himself of any income"). However, though the court indicated that it imputed income to the former husband in awarding temporary alimony to the former wife, it did not indicate that it was in fact imputing income to the former husband in awarding permanent alimony. See Greenberg v. Greenberg, 823 So. 2d

- 4 -

176, 177 (Fla. 4th DCA 2002) ("The factual findings in the temporary order on alimony . . . do not restrict the trial court from determining alimony . . . in accordance with the evidence presented at the final hearing and the applicable law.").  It is possible, as the former husband contends, that the court awarded permanent alimony based on imputed income.  It is also possible, given the testimony and evidence presented during trial that the former husband has been able to stay current—for the most part—on his expenses and temporary alimony, that the court based the award of permanent alimony on the former husband's actual income.  But just as the court failed to indicate whether it was imputing income to the former husband in awarding permanent alimony it also failed to make a finding regarding actual net income.  See McCants v. McCants, 984 So. 2d 678, 682 (Fla. 2d DCA 2008) ("It is well-established that the trial court must determine each spouse's [net] income for purposes of alimony . . . .").  Our review is thus hampered, and we must reverse the alimony award and remand for the court to make the appropriate findings based on the record; the court may also conduct further proceedings as needed.  See Wabeke v. Wabeke, 31 So. 3d 793, 796 (Fla. 2d DCA 2009) ("A trial court's failure to make specific factual findings with regard to alimony 'may preclude meaningful appellate review[ ] and result in a case having to be reversed and remanded.' " (alteration in original) (quoting Ruberg v. Ruberg, 858 So. 2d 1147, 1155 (Fla. 2d DCA 2003))); McCants, 984 So. 2d at 682 (holding that "meaningful appellate review is hampered by the absence of findings as to how the trial court determined the income amount" for alimony and child support purposes); see also Cooper v. Cooper, 639 So. 2d 153, 155 (Fla. 2d DCA 1994) ("[I]t is not clear in the final judgment whether an imputation was made and, if so, in what amount.  Upon remand, if

the trial court determines that income should be imputed to the husband, such imputation must be based on a finding that the husband is capable of earning a specified, imputed amount and that he could, in fact, earn this amount by using his best efforts.").

Additionally, section 61.08(8) provides that "[i]n awarding permanent alimony, the court shall include a finding that no other form of alimony is fair and reasonable under the circumstances of the parties." (Emphasis added.) The court did not expressly make this finding or specifically reference subsection (8). Rather, the court indicated the following, in part, with respect to section 61.08(2) and section 61.08 generally: "The [former] [w]ife showed she had a need for alimony and the [former] [h]usband showed that he had an ability to pay. . . . In determining [a]limony, all issues were considered in conjunction with Florida Statute 61.08 . . . ." This court and others have recognized that the fair and reasonable finding is statutorily required when awarding permanent alimony. See Vinsand v. Vinsand, 179 So. 3d 366, 369 (Fla. 2d DCA 2015) ("[T]he trial court failed to make a finding that no other form of alimony was fair or reasonable under the circumstances of this case. We note that such a finding is now statutorily required . . . ." (citing Winder v. Winder, 152 So. 3d 836, 841 (Fla. 1st DCA 2014))); Taylor v. Taylor, 177 So. 3d 1000, 1003 (Fla. 2d DCA 2015) ("[W]hen [permanent alimony] is awarded the court must 'include a finding that no other form of alimony is fair and reasonable under the circumstances of the parties.' " (quoting § 61.08(8), Fla. Stat. (2012))); Jordan v. Jordan, 199 So. 3d 343, 345 (Fla. 4th DCA 2016) ("The trial court did, however, fail to make the requisite finding that no other form of alimony would be fair and reasonable. Section 61.08(8) provides: 'In awarding

- 6 -

permanent alimony, the court shall include a finding that no other form of alimony is fair and reasonable under the circumstances of the parties.' § 61.08(8), Fla. Stat. (2015) (emphasis added). Neither the original nor the amended final judgment included this finding. That finding might be implicit in the trial court's conclusion; nevertheless, the statute requires the finding to be made. We therefore reverse and remand the case for this finding, which the trial court will no doubt make."), rev. denied, No. SC16-1954, 2017 WL 944234 (Fla. Mar. 10, 2017). Even if this finding is implicit in the court's ruling given the length of the marriage, the former's wife's need for alimony, and the former husband's apparent ability to pay alimony, we must reverse as to this issue.

Accordingly, we reverse the alimony award and remand for the court to make sufficient findings of fact in accordance with this opinion. The court may conduct further proceedings as needed. The final judgment of dissolution is otherwise affirmed.

Affirmed in part; reversed in part; remanded with instructions.


SILBERMAN and ROTHSTEIN-YOUAKIM, JJ., Concur.